UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SALVADORA C. DOMINGUEZ,

       Plaintiff,

  v.

MICHAEL J. ASTRUE,

       Defendant.

                                               /

No. C 07-04812 MHP

**MEMORANDUM & ORDER**

**Re: Cross-Motions for Summary Judgment**

       Having exhausted her administrative remedies, claimant Salvadora Castro Dominguez ("claimant") seeks judicial review, pursuant to 42 U.S.C. section 405(g), of a final decision of Michael J. Astrue, the Commissioner of Social Security ("defendant"). Now before the court is claimant's motion for summary judgment or, in the alternative, motion for remand, and defendant's cross-motion for summary judgment. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

       On August 5, 2004, claimant filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging a disability date of February 1, 2003. Certified Administrative Transcript ("TR") at 57-59, 450-59. The applications were denied initially and on reconsideration. TR at 52, 38. On November 15, 2006, claimant had a hearing before the Administrative Law Judge ("ALJ"). TR at 483.

       Claimant is a forty-nine year old woman from Nicaragua with an eighth grade education. TR at 484. Claimant stated she is presently unable to work because of trouble with her knees, back, hands and memory. TR at 487. Claimant lives with her daughter, Mayling Dominguez Castro, in

Daly City. TR at 451. Regarding her daily routine, claimant stated she makes sandwiches for her daughter, does exercises, sometimes goes shopping with her daughter, does some cooking and cleaning, and sometimes visits relatives. TR at 491.

At the hearing, a vocational expert testified as an expert witness on two hypotheticals. TR at 498, 499. The expert found that, under the first hypothetical where claimant had a 40-50% reduction in her ability to perform complex tasks, a 10% reduction in her ability to perform simple tasks, and her physical limitations, claimant would still be able to perform her previous work of a laundry folder. TR at 499. The expert noted that, under the second hypothetical, if claimant had a 40-50% reduction in her ability to perform simple tasks, as opposed to 10%, there would be no job in the labor market that claimant could perform. TR at 500-01.

The ALJ decision, dated December 5, 2006, found that claimant is not disabled under the Social Security Act. TR at 21-27. On July 16, 2007, the Social Security Appeals Council found no reason to review the ALJ decision, which became the final decision of the Commissioner of Social Security. TR at 6. Claimant then sought judicial review pursuant to 42 U.S.C. section 405(g).

I.      Claimant's Physical Complaints

Claimant suffers from many physical ailments. Claimant's chief physical complaints include knee pain, back pain, shoulder pain and carpal tunnel syndrome in her right hand. TR at 22, 67, 204. Since claimant's 2002 work injury, claimant has been treated by approximately eight doctors for her various physical complaints. Claimant has undergone surgery for both her carpal tunnel syndrome and her left knee, and doctors have continued to monitor any disc disease in her back. Most of the doctors agree that claimant is somewhat limited in her ability to perform certain tasks, such as heavy lifting, and repetitive bending, stooping, squatting and kneeling. The doctors generally agree that claimant's ability to reach is also somewhat limited. Two of her doctors, however, opine that claimant's limitations are more severe and would preclude her from all but extremely light work. Furthermore, several of claimant's doctors noted that claimant appeared to have an exaggerated pain response.

2

In 1998, claimant worked for American Linen, where claimant states she suffered a right carpal tunnel injury when a laundry bag fell. TR at 465. Claimant's right carpal tunnel injury was treated and resolved with surgery. TR at 178. Claimant attributes the cause of her knee and back pain to an August 2002 work-related injury involving picking up frozen food weighing about forty-to-fifty pounds. TR at 143. Multiple doctors indicated that claimant suffered from damage to her left knee. TR at 439, 440, 159-174, 197. In a March 2003 MRI, claimant's left knee showed a lateral meniscus tear, and her lumbar spine showed a very small midline disc protrusion. TR at 154, 155. In April 2003, one of claimant's doctors, Gloria Contreras, opined claimant had a chronic left knee sprain and lower back pain, and that claimant should only perform work that did not include frequent bending, stooping, lifting, pushing or pulling. TR at 179, 180. Also in April 2003, claimant's doctor Jules Steimnitz found that claimant's back and knee pain precluded her from very heavy work. TR at 397. He also found positive Waddell testing—a test where a "positive" result may indicate that back pain may be the result of psychological factors in addition to physical factors—noting that claimant showed such indicators as diffuse tenderness, hypersensitivity to light touch and over-reaction to stimuli. TR at 394.

In November 2003, claimant's doctor Jeffrey Schubiner performed surgery on her left knee, and ordered her to remain off work until around January 2004. TR at 193, 194, 198, 199. In a January 2004 MRI, claimant's lumbar spine showed some indication of disc disease at three discs. TR 384, 385. Schubiner opined that her knee problems were resolved. TR at 191. Schubiner further opined that claimant was histrionic in her reaction to pain and that she likely had chronic pain syndrome. TR at 182, 201.

In April 2004, Steimnitz once again opined that claimant was precluded from only very heavy work and noted that she demonstrated non-anatomic responses to routine testing. TR at 402. Claimant received epidural steroid injections for her back pain from September 2004 through May 2005 from another doctor, Yung Chen, and was instructed to remain off work for six weeks after each injection. TR at 216-229.

In November 2004, another doctor, Calvin Pon, indicated claimant's chief complaints were left shoulder pain, right hand pain and numbness, low back pain and left knee pain. TR at 204. Pon

3

reported claimant stated that she performs independent daily living activities, such as dressing, cooking, feeding, hygiene-related activities, driving a car and some housework. TR at 204, 205. Pon opined that claimant should be able to stand and walk for a total of four to six hours during an eight-hour workday, to sit for a total of six hours during an eight-hour workday, and to lift and carry ten pounds frequently and twenty pounds occasionally. TR at 206. Also in November 2004, Steimnitz reiterated his estimate that claimant was precluded from very heavy lifting, squatting and kneeling, a diagnosis that was echoed in September 2005 by another of claimant's doctors, Stanley Baer. TR at 386, 369.

In October 2005, another doctor, Edward Katz, recorded claimant's assertion that she had pain in the left leg, right knee, neck and shoulders, left-sided weakness and numbness in both hands. TR at 259. Katz stated claimant made a nice recovery from her knee surgery and opined claimant should be precluded from heavy lifting, repetitive bending and stooping, and repetitive squatting and kneeling. TR at 263.

In a March 2006 MRI for Steimnitz, claimant's left knee showed a 1.5 cm cyst but no meniscal tear. TR at 413. In an April 2006 follow up, Steimnitz opined claimant has developed chronic pain and referred her to a cognitive behavioral pain management and neurosurgical consultations. TR at 419. In June 2006, another doctor, Bruce McCormack, stated claimant was not a candidate for any spine surgery, fusion or discectomy because predicted outcomes for people in claimant's position were poor. TR at 426.

In an undated medical source statement of ability to do work related activities, Steimnitz opined that claimant was occasionally and frequently precluded from lifting less than ten pounds. TR at 447. Steimnitz further opined that claimant could stand for less than two hours a day and sit for less than six hours. TR at 447. Finally, Steimnitz opined that claimant was limited to occasional reaching. TR at 449.

II.     <u>Claimant's Mental Complaints</u>

Claimant has seen four different treating psychiatrists/psychologists and social workers, and her record has been reviewed by three additional psychiatrists. While all generally agree that

4

claimant suffers from depression, the doctors disagree as to the exact effect that has on claimant's ability to function. See, e.g., TR at 234, 267, 269, 328-47, 234,

In June 2005, psychologist Jonathan Gonick-Hallows opined that claimant presented some histrionic features in describing her life and her history. TR at 235. Gonick-Hallows diagnosed claimant with major depression and Global Assessment of Functioning ("GAF") of fifty-seven. TR at 235. The GAF uses a one to one hundred scale where one hundred is totally functional. At the same time, psychiatrist Howard Hansell opined that claimant was capable of simple, repetitive tasks in a setting accounting for her physical discomforts and limitations, and that there were no objective findings of severe physical or psychological impairment which would impede claimant's ability to perform all work activities. TR at 255-56.

From April 2005 to January 2006, social worker Teresa Soto periodically rated claimant's GAF at fifty-one to sixty or at forty-one to fifty. Compare top TR at 269 with bottom TR at 269. During roughly that same time period, psychiatrist Frederick Becker variously opined that claimant had a GAF of fifty-one or forty-one. TR at 268, 274.

In February 2006, psychologist Jonathan Dunn performed a psychological evaluation on claimant, but cautioned that the analysis was based on the data at face value, and not confirmed by clinical or historical data. TR at 405, 406. Dunn stated claimant's Wahler Physical Symptom Inventory score suggested that claimant tends to exaggerate her perceptions, and underscored the unlikelihood that all her physical complaints were based on genuine organic pathology. TR at 408. The Wahler Physical Symptom Inventory is a test used by psychologists to help determine if physical complaints are psychologically based.

In a June 2006 psychiatric evaluation, psychiatrist Julie B. Stahl evaluated claimant based on Dunn's psychological testing, her review of claimant's medical and psychological records from Kaiser South San Francisco, and her own interview and tests. TR 432, 436, 439. Stahl opined that claimant's physical injury was related to her work injury, and it was unclear whether her psychiatric symptoms arose from the same injury. TR at 443. Stahl diagnosed claimant with adjustment disorder with mixed anxiety and depressed mood and GAF of sixty. TR at 444. Stahl found that claimant's ability to comprehend and follow instructions and perform simple and repetitive tasks in a

work setting was not impaired. TR at 445. Stahl opined that claimant would likely be slightly impaired in her ability to maintain a work pace appropriate to a given workload, to perform complex or varied tasks, to relate to others beyond giving and receiving instructions, to influence people, to make generalizations, evaluations or decisions without immediate supervision, and to accept and carry out responsibility for direction, control and planning. TR at 445.

In November 2006, Michael D. Goldfield performed a similar review of claimant's prior medical records and diagnosed claimant with major depressive disorder, panic disorder and a GAF of fifty-three. TR at 463-70.

### III.   The ALJ's Findings

On December 5, 2006, the ALJ found claimant was not disabled and therefore denied her social security benefits. TR at 26. In arriving at this conclusion, the ALJ made several findings of fact. The ALJ found that claimant had not been engaged in substantial gainful activity since February 1, 2003. TR at 21. The ALJ found that claimant had several severe impairments including carpal tunnel syndrome, degenerative disc disease of the lumbar spine, left knee pain and has depression, all well supported by medical evidence. TR at 25-26. The ALJ determined that these impairments, either singly or in combination, were not of sufficient severity to meet or equal one of the impairments determined to be conclusively disabling. TR at 26. The ALJ, based on the record as a whole, decided to give substantial weight to Stahl's opinion. TR at 25. For claimant's physical residual functional capacity ("RFC"), the ALJ determined that claimant's physical impairments did not prevent her from performing light work except for work involving occasional stooping, crawling and bending. TR at 26, 27. For claimant's mental RFC, the ALJ found claimant had a mild restriction on activities of daily living and social functioning, as well as in concentration, persistence and pace. TR at 27. In view of the above restrictions, the ALJ found claimant's impairments did not prevent her from performing past relevant work, such as laundry folder work. TR at 27.

The ALJ did not find the testimony of claimant or claimant's daughter to be credible in light of inconsistencies in claimant's reported pain and her extensive daily living activities. In particular, the ALJ found that the doctors had positive prognoses for her knee, TR at 25, and that she had a

1  history of non-anatomic responses to pain and was prone to histrionics. TR at 22. Claimant was
2  also taking multiple pain medications. TR at 23. Furthermore, the ALJ found other inconsistencies
3  between claimant's self-reported work history, educational history and ability to speak or write
4  English and what the record supported. TR at 25, 26.

On July 16, 2007, the Appeals Council reviewed the ALJ's decision and considered additional evidence submitted by claimant. TR at 6. The Council affirmed the ALJ's decision and found that the additional evidence, a psychological report by Michael Goldfield, did not provide a basis for changing the ALJ's determination. TR at 7. The Council found that although the report was consistent in part with the ALJ's previously credited Stahl report with respect to the functional limitations, the report relied on some questionable underlying data. TR at 7. The Council therefore accorded little weight to the newly submitted report. TR at 7.

LEGAL STANDARD

A district court may disturb the Commissioner's final decision "only if it is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). The court's review, however, "must consider the record as a whole," which includes both evidence which supports as well as evidence which detracts from the Commissioner's decision. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). If, however, "the evidence is susceptible to more than one rational interpretation," the Commissioner's decision must be affirmed. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Even if substantial evidence supports the Commissioner's fact findings, his decision must be set aside if improper legal standards were applied in reaching that decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

DISCUSSION

In order to qualify for disability benefits, a person must establish a medically determinable physical or mental impairment that (1) is expected to result in death or last for a continuous period of at least twelve months (2) which prevents him or her from engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520, 416.920; see also Galant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984). In determining whether a claimant is disabled, the ALJ must use a five-step analysis in which progression to the next step is contingent on the result of the previous step. See Bowen v. Yuckert, 482 U.S. 137, 141-43 (1987). The five steps are (1) whether the claimant is presently gainfully employed; and if not (2) whether claimant has a severe impairment; and if so (3) whether the impairment meets or equals one of the impairments determined to be conclusively disabling; and if so (4) whether the impairment prevents the claimant from performing his or her past relevant work; and if so (5) the burden then shifts to the Commissioner to show whether the claimant is able to perform any other work within the national economy. Id.

The ALJ found that claimant was not presently working and that she had several severe impairments, including carpal tunnel syndrome, degenerative disc disease of the lumbar spine, left knee pain and depression, but that the impairments were not such that claimant was conclusively disabled. TR at 26. Relying on the guidance of a vocational expert, the ALJ found that claimant could perform her past relevant work as a laundry folder. TR at 26. Since the ALJ found that claimant could perform her past relevant work, the ALJ did not need to perform the last step of the analysis.

Claimant contends that the ALJ committed legal error by rejecting the treating physicians' opinions of claimant's physical and mental impairments, by rejecting testimony of claimant and claimant's daughter as not credible and by failing to rely on substantial evidence in finding that claimant can perform her past work. The court will address each in turn.

I.  Opinions of Physical Impairments

Claimant argues that the ALJ's rejection of the treating physicians opinion is legal error on two fronts, both of which would impact the ALJ's final decision. First, claimant argues that treating

8

1  physician Steimnitz's undated opinion limiting claimant's work ability was improperly rejected.
2  Second, claimant argues that the ALJ failed to provide any reason for rejecting Steimnitz's opinion
3  that claimant's shoulders were impaired.

          A.      <u>Steimnitz's Undated Opinion</u>

6  Claimant argues that the ALJ failed to provide legally sufficient reasons to reject the undated
7  opinion of one of the treating physicians, Steimnitz, regarding claimant's ability to perform certain
8  functions. A treating physician opinion carries greater weight than non-treating physician opinions.
9  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

10  In the opinion in question, Steimnitz marked boxes for his assessment and provided little-to-
11  no support for the assessment. TR 447-49. This assessment indicated claimant's impairment limited
12  her to occasionally or frequently lifting and carrying less than ten pounds, to standing and walking
13  less than two hours in an eight-hour workday, to sitting less than six hours in an eight-hour work
14  day. <u>Id.</u> Claimant argues that under this assessment, claimant would not be able to perform even
15  sedentary work.[1] Claimant argues that the ALJ's reliance on claimant's exaggeration of symptoms
16  was not a legitimate reason to reject Steimnitz's statement because there is no evidence that
17  Steimnitz's opinion was based solely on claimant's subjective symptoms.

18  "The ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of
19  an examining physician if the ALJ makes 'findings setting forth specific, legitimate reasons for
20  doing so that are based on substantial evidence in the record.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947,
21  957 (9th Cir. 2002), <u>citing</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). As noted
22  above, substantial evidence to support a finding is "relevant evidence which a reasonable person
23  might accept as adequate to support a conclusion." <u>Matthews</u>, 10 F.3d at 679. The ALJ can "meet
24  this burden by setting out a detailed and thorough summary of the facts and conflicting clinical
25  evidence, stating his interpretation thereof, and making findings." <u>Thomas</u>, 278 F.3d at 957, <u>citing</u>
26  <u>Magallanes</u>, 881 F.2d at 751.

27  The ALJ set forth specific, legitimate reasons for rejecting this undated Steimnitz opinion.
28  The ALJ found that there was "other objective evidence that suggests claimant is exaggerating her

symptoms." TR at 25. The ALJ set forth two areas of evidence for this conclusion: (1) the analysis regarding the conflicting reports of other doctors, including Steimnitz's previous reports, and (2) claimant's non-anatomic symptoms and histrionic tendencies. TR at 25.

First, the ALJ extensively reviewed the other medical reports which conflicted with Steimnitz's undated report. When the record has conflicting medical evidence, the ALJ may determine credibility and resolve the conflict. Thomas, 278 F.3d at 957. When the record was viewed as a whole, Steimnitz's undated report was the only evidence which suggested that claimant is permanently unable to perform even sedentary work. TR at 447-49.[2] The ALJ's summary of the other medical opinions support the ALJ's finding that claimant has the residual capacity to perform light work-related activities.

Second, the ALJ's summary recognized that both treating and examining physicians noted claimant's exaggeration of symptoms on multiple occasions. In conjunction with the discrepancy between the majority of the medical reports and Steimnitz's undated report, claimant's exaggeration of symptoms provides substantial support for the ALJ's decision to accord that report limited weight and is not legal error.

B.  Reaching Limitation

Claimant contends that the ALJ improperly discounted claimant's left shoulder impairment. Claimant's reliance on Steimnitz's undated report is misplaced, since, as discussed above, the ALJ properly discounted this report. Contrary to defendant's assertion, however, doctors other than Steimnitz commented on claimant's shoulder limitation. See, e.g., TR at 206, 211, 262, 370. In several places in his opinion, the ALJ noted that other doctors had made note of claimant's shoulder complaints. TR at 23. Yet, the ALJ failed to include this limitation in his physical RFC assessment. TR at 26-27. Because claimant contends this error is significant because "reaching" is required in claimant's previous work as a laundry folder,[3] the court therefore must consider if this error is significant or harmless.

A court need not reverse a decision if the error is harmless. Stout v. Comm'r of Social Security Admin., 454 F.3d 1050, 1054 (9th Cir. 2006). Harmless error exists when the error, if

1  made, "was inconsequential to the ultimate non-disability determination." Id. at 1055, citing Burch
2  v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error was nonprejudicial); Curry v.
3  Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (concluding errors were "immaterial"). "A reviewing
4  court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ,
5  when fully crediting the testimony, could have reached a different disability determination." Stout,
6  454 F.3d at 1056.

7  Even if the court were to credit the doctors' opinions on claimant's shoulder limitation as a
8  matter of law, see Lester v. Chater, 81F.3d 821, 834 (9th Cir. 1995), the court is unable to conclude
9  that no reasonable ALJ would have found that such a limitation would render claimant disabled.
10 See, e.g., Social Security Ruling ("SSR")[4] 85-15 ("Varying degrees of limitations [on "[r]eaching,
11 handling, fingering, and feeling"] would have different effects, and the assistance of a VS
12 [vocational specialist] may be needed to determine the effects of the limitations."). Accordingly, the
13 court remands this issue to the ALJ to properly consider this medical evidence and issue a new
14 physical RFC finding. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 2004).[5]

15

16 II.   Opinions of Mental Impairments

17 Claimant contends that the ALJ improperly ignored treating physicians' testimony without
18 providing specific legitimate reasons that are supported by substantial evidence in the record. See
19 Smolen, 80 F.3d at 1285. Claimant sets forth three areas of contention: (1) that the ALJ's failure to
20 consider the testimony from Becker, Gonick-Hallows, and Hansell is legal error; (2) that the Appeals
21 Council failed to provide legally sufficient reasons for rejecting the testimony of Goldfield; and (3)
22 that the weight given to Stahl's testimony is not substantially supported by the record.

23

24    A.   ALJ's Conclusions on Physicians' Testimony

25 Claimant contends that the ALJ did not provide reasons to reject the opinions of Becker,
26 Gonick-Hallows, and Hansell. The court agrees. While the "ALJ does not need to discuss every
27 piece of evidence," Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), it cannot discard a
28 treating physician's opinion, if contradicted by other testimony, without setting forth "specific and

11

1  legitimate reasons." Smolen, 80 F.3d at 1285.  The ALJ mentioned treating physician Becker's
2  reports only indirectly.  See TR at 24 ("Records from claimant's primary care physicians at Kaiser
3  Permanente showed she was briefly treated for symptoms of major depression . . . .").  Becker's
4  GAF of forty-one to fifty conflicts directly with Stahl's GAF of sixty.  Compare TR at 268, 274,
5  276-78, 288, 292, 300, 308 with TR at 444.  The ALJ provided no reasons for discounting Becker's
6  testimony when deciding to grant heavy weight to Stahl's assessment.[6]  TR at 25.  The ALJ's failure
7  to do so is legal error, and this issue will also be remanded to the ALJ to present those specific
8  reasons.[7]

9      The ALJ also provided no reasons why it chose to weigh Stahl's consultative report more
10 heavily than the reports of Gonick-Hallows and Hansell.  While the ALJ need not "recite the magic
11 words" and explicitly set forth why the ALJ rejected Gonick-Hallows and Hansell's opinions,
12 Magallanes, 881 F.2d at 755, the ALJ does need to summarize the conflicting testimony and make
13 specific and legitimate findings to support its decision.  Id.; see also SSR 96-6p ("[ALJs] are not
14 bound by findings made by State agency or other program physicians and psychologists, but they
15 may not ignore these opinions and must explain the weight given to the opinions in their decisions.")
16 Here, the ALJ did not do so.

17      Defendant asserts that there was no conflict between the testimonies and the ALJ's mental
18 RFC finding.  These doctors' testimonies are, in some important respects, inconsistent with Stahl's
19 opinion and the ultimate mental RFC finding.  For example, Gonick-Hallows opined that claimant
20 suffered from short-term memory loss.[8]  TR at 235.  Hansell opined that claimant suffered moderate
21 restrictions in her ability to carry out detailed instructions, maintain attention and concentration for
22 extended period, perform work activities within a schedule and sustain an ordinary routine without
23 supervision.  TR at 256.  Stahl, however, opined that claimant suffered only slight restrictions in her
24 ability to maintain an appropriate work pace, to perform complex or varied tasks, to make
25 generalizations and decisions without immediate supervision, and to accept and carry out
26 responsibility for direction, control and planning.  TR at 445.  These conclusions are in conflict, in
27 that one finds moderate restrictions where the other finds only slight restrictions.  When further
28 compared with the ALJ's conclusion that claimant suffered a 40-50% reduction in her ability to

12

1  perform complex tasks and only a 10% reduction in simple tasks, TR at 27, this conflict appears all
2  the starker. The ALJ has not properly summarized the conflicting testimony and demonstrated why
3  it chose Stahl's assessment over the other physicians' assessments.[9]

### B. Appeals Council Conclusions

Conversely, claimant's similar contention that the Appeals Council failed to provide legally sufficient reasons for rejecting Goldfield's testimony is without merit. The Appeals Council set forth several reasons why it gave Goldfield's testimony little weight. TR at 7. Under Ninth Circuit precedent, that is all that is required. See Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993).

### C. Sufficiency of Stahl's Report

Claimant argues that Stahl's report is based on "highly suspect psychological test data," and is therefore not supported by substantial evidence. Pl.'s Mot. 15:14-16.[10] An ALJ is specially charged with weighing and evaluating testimony. See Magallanes, 881 F.2d at 750. In order to be "substantial evidence," it need only be such that a reasonable person might find it adequate to support the conclusion. Matthews, 10 F.3d at 679. Even if substantial evidence supports the fact finding, the decision must be set aside if improper legal standards were applied in reaching that decision. See Benitez, 573 F.2d at 655.

The ALJ set forth the particular areas where it accorded Stahl's interpretation of the psychological data more weight with regard to the interpretations of Dunn, Steimnitz and Schubiner, and why it adopted Stahl's opinion. TR at 24, 25. This is fully consistent with the ALJ's responsibility to summarize the medical evidence as a whole, weigh any conflicting testimony and explain why it accorded weight to one opinion over the other. Magallanes, 881 F.2d at 755. The court may not "substitute its own determination of what the evidence shows for the ALJ's if there is sufficient evidence to support the ALJ's outcome." Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Here, the ALJ properly carried out this function with regard to the opinions of Dunn, Steimnitz and Schubiner, but, as discussed above, failed to do so with regard to the opinions of Becker, Gonick-Hallows and Hansell. Therefore, while the Stahl report contains substantial

13

evidence which supports the ALJ's conclusion, the decision must be set aside because the ALJ failed to apply the proper legal standard with respect to all of the treating physicians' testimonies. See Benitez, 573 F.2d at 655.

III. Credibility of Testimony by Claimant and Claimant's Daughter

Claimant maintains that the ALJ erred in finding that testimony by claimant and claimant's daughter was not credible. In general, a claimant's testimony regarding a disability must be supported by medical signs or laboratory findings that support the conclusion of a medically determinable impairment. See 20 C.F.R. § 404.1529(b). But once such objective medical findings are submitted, "under the Cotton-Varney-Gamer precedent . . . an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc), citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). The ALJ, moreover, must consider a claimant's daily activities and course of treatment to determine if they are consistent with the alleged severity of the pain. See Bunnell, 947 F.2d at 346-47. The factors relevant to an analysis of subjective evidence include daily activities, inconsistencies in testimony, the "effectiveness and adverse side effects" of pain medication and relevant character evidence. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), citing Bunnell, 947 F.2d at 346. When an ALJ rejects a claimant's subjective symptom testimony, he must make specific findings supporting that conclusion. Bunnell, 947 F.2d at 345. Notably, resolution of conflicts in the evidence and testimony is a function solely for the ALJ. See Magallanes, 881 F.2d at 750.

A. Claimant's Testimony

Claimant argues that the ALJ improperly dismissed claimant's testimony without providing clear and convincing evidence for that dismissal. While it would be improper to reject "subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," Bunnell, 947 F.2d at 345, the ALJ clearly set forth that it was rejecting claimant's testimony based on a combination of the underlying medical testimony, evidence indicating

14

1  claimant's histrionic tendencies and non-anatomic symptoms, and other evidence regarding
2  claimant's ability to conduct extensive activities of daily life. TR at 25. Furthermore, the ALJ also
3  properly weighed other character evidence, such as inconsistences with regard to claimant's
4  testimony in other areas, such as her work history, educational history and ability to read and write
5  English. TR at 25.
6        Claimant's attempts to break down the ALJ's rationale into discrete packets is unavailing.
7  The court does not doubt that claimant has underlying medical conditions.[11] The ALJ noted as
8  much. TR at 26. It is, however, not the test that once some sort of objective medical evidence is
9  provided, the ALJ may not question the claimant's subjective pain. Cotton, 799 F.2d at 1407,
10 enforced at 20 C.F.R. § 404.1529(c). Instead, under Cotton, providing objective medical evidence is
11 only the first step. Id. Once that has happened, the ALJ is empowered to make a credibility finding
12 of "excess pain." Id. Furthermore, claimant's argument that the inconsistencies regarding
13 claimant's education level and English speaking abilities are not supported by the record is
14 unpersuasive. Claimant's testimony, presented at a hearing before the ALJ, regarding her work
15 history, educational history and English abilities provides adequate support for the ALJ's findings.
16 TR at 485, 486, 493, 495.
17
18       B.    Claimant's Daughter's Testimony
19       Claimant further asserts that the ALJ erred by ignoring the daughter Mayling Castro's
20 testimony and failed to provide reasons germane to Mayling Castro. The ALJ must set forth reasons
21 germane to each lay witness in order to discount subjective testimony. Nguyen v. Chater, 100 F.3d
22 1462, 1467 (9th Cir. 1996), citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ did
23 set forth reasons that are germane to the daughter's testimony. The ALJ found that the daughter's
24 testimony was contradicted by the other objective clinical findings and the extent of the treatment.
25 TR at 26. Furthermore, the ALJ found that claimant was prone to histrionics. TR at 25. Any
26 observations by the daughter would be tainted by claimant's own exaggeration of pain. Since
27 resolution of conflicts in the evidence and testimony is a function solely for the ALJ, see
28 Magallanes, 881 F.2d at 750, the ALJ was justified in discounting the daughter's testimony.[12]

15

VI.     Instructions on Remand

This case is remanded to the ALJ for reconsideration with respect to two areas. The ALJ must consider claimant's reaching limitation when determining if claimant is in fact disabled. The ALJ must also present specific and legitimate evidence as to why it accords Stahl's report more weight than the opinions of treating physicians Becker, Gonick-Hallows and Hansell. The ALJ has sufficiently supported its conclusions with regard to (1) discounting Steimnitz's undated opinion; (2) choosing Stahl's report over the testimonies of Dunn, Steimnitz and Schubiner; and (3) discounting the testimonies of claimant and claimant's daughter. The Appeals Council sufficiently supported its conclusion with regard to discounting Goldfield's testimony.[13]

CONCLUSION

Claimant's motion for summary judgment is **GRANTED** in part and **DENIED** in part for the reasons discussed above. The court remands this proceeding to the ALJ for further administrative proceedings consistent with this opinion. Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: March 26, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

16

**ENDNOTES**

1. "Sedentary work involves lifting no more than ten pounds at a time . . . ." 20 C.F.R. 404.1567(a) "[P]eriods of standing or walking should generally total no more than about two hours of an eight-hour workday, and sitting should generally total approximately six hours of an eight-hour workday." Social Security Ruling ("SSR") 83-10. See also, infra note 4.

2. Claimant submits a new report from Steimnitz. Pl.'s Mot., Exh. A. Because the district court may not affirm based on grounds not established by the ALJ, the court does not accord the new report any weight. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001), citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

3. According to the Dictionary of Occupational Titles, a folder (code 369 687 018, see TR at 500) has the following description: "Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles. May be designated according to type of laundry folded as Shirt Folder (laundry & rel.) I; Wearing-Apparel Folder (laundry & rel.). GOE: 06.04.35 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 78." Dictionary of Occupational Titles, CODE: 369.687.018, TITLE: Folder (Laundry & related), http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM (last visited Feb. 18, 2009).

4. SSRs are rulings issued by the Social Security Administration to clarify the implementation of regulations and policies. SSRs are binding on the Social Security Administration and are entitled to some deference, but do not have the force of law. SSRs will be ignored when they are inconsistent with statutes. Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).

5. The court declines claimant's invitation to forgo remand and order the payment of benefits. A district court can order the immediate award of benefits if "1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; 2) there are no outstanding issues that must be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find claimant disabled were such evidence credited." Benecke v. Barnhart, 379 F.3d, 587, 593 (9th Cir. 2004). Because the addition of a reaching limitation on work ability requires the assistance of a vocational expert, the court is not convinced that there are no outstanding issues that must be resolved. Instead, "additional proceedings can remedy defects in the original administrative proceedings," and this action should therefore be remanded. McAllister, 888 F.2d at 603.

6. Becker's GAF assessments sometimes conflict with Teresa Soto's assessments, often given on the same date. Compare TR at 274 with TR at 280. The court, however, may not affirm an ALJ decision on grounds the ALJ "did not invoke in making its decision." Pinto, 249 F.3d at 847.

7. Defendant properly notes that failure to reference a GAF alone is not enough to order remand. See Howard v. Comm'r of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). That argument is inapposite here. In Howard, the issue was whether the ALJ's failure to reference a GAF *at all* in its findings was enough for remand. Id. The problem here, however, is that the ALJ was presented with two different GAFs from treating and consultative physicians and did not set forth specific and legitimate reasons for choosing to discount a treating physician's testimony in favor of an consultative physician's testimony.

8. Claimant correctly asserts that the ALJ only referenced Gonick-Hallows' opinion with regard to claimant's histrionics and that she seemed impulsive; and not, as defendant asserts, with regard to her short term memory loss. TR at 25.

9. Defendant's assertion that the ALJ was justified in adopting Stahl's testimony over other testimony based on claimant's non-compliance with her anti-depressant medication is not a ground that the ALJ used. Accordingly, the court may not rely on it to affirm the ALJ opinion. Pinto, 249 F.3d at 847.

10. Claimant further argues that Stahl's report is internally inconsistent. Claimant's proposed inconsistency—that Stahl rated some of claimant's impairments only slight, but then accorded her a GAF of sixty—is not actually inconsistent. A GAF of sixty is a borderline score. See Global Assessment of Functioning (GAF) Scale, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000). A person scoring only one point higher is classified as having mild problems. Furthermore, a score in the fifty-one to sixty range indicates that the person only has moderate difficulty in social, occupational or school functioning. If anything, based on Stahl's report on a whole, Stahl appears to have conservatively awarded a GAF of sixty. See TR at 432-46.

11. Claimant's reliance on Smolen v. Chater is misplaced. In Smolen, the ALJ improperly considered only some of claimant's underlying medical conditions. 80 F.3d at 1281. The ALJ here was fully aware of all of claimant's physical conditions. Furthermore, in Smolen, the ALJ based his entire credibility analysis on whether or not there was an underlying medical cause. Here, the ALJ based its conclusion based on multiple factors throughout the entire record.

12. Although not directly raised in the ALJ decision, it is interesting to note how similar the mother's and daughter's testimony are. Compare TR at 81 with TR at 120. In fact, one of the few differences between their testimonies is the daughter's assessment that "she [claimant] complains about brushing her hair because her scalp hurts." TR at 120. Since this is apparently the only reference to scalp pain in the entire record, it may provide further evidence of claimant's histrionics and non-anatomic responses to pain.

13. Because the court is remanding this decision to the ALJ, it need not address claimant's arguments regarding the vocational expert's testimony pursuant to the ALJ's hypotheticals. The vocational expert's testimony is already unsupportable because the ALJ failed to consider all relevant limitations, such as the reaching limitation. See Lewis v. Apfel, 263 F.3d 503, 517 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must set out all of the claimant's impairments."). Because the ALJ can no longer rely on that vocational expert's opinion, claimant's argument regarding the ALJ's alleged failure to include periods of decompensation and allegedly arbitrary translation of RFCs into percentages is rendered moot. The ALJ will have to consult a vocational expert with regard to the impact of the reaching limitation, See SSR 85-15 ("Varying degrees of limitations [on "[r]eaching, handling, fingering, and feeling"] would have different effects, and the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations."), and to address the effect, if any, that limitation has on claimant's ability to perform her past work, or any work. See Bowen, 482 U.S. at 141-43.

    With regard to the hypotheticals, the ALJ is allowed to "limit a hypothetical to those impairments that are supported by substantial evidence in the record." Osenbrook v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001). While the ALJ failed to apply the proper legal standard in according Stahl's report more weight over the opinions of Gonick-Hallows, Hansell and Becker, the report itself provides substantial evidence for the percentages the ALJ supplied to the vocational expert. Should the ALJ continue to rely on Stahl's report, the percentage values are supportable. Furthermore, the periods of decompensation noted by claimant happened in 1992 and 2001—before the period of disability claimed here. TR at 342. There is no indication that claimant has suffered any periods of decompensation since claiming her disability in 2003. In evaluating a disability, an ALJ looks to the onset date, and must determine if a claimant is unable "to engage in any substantial gainful activity by reason of any . . . mental impairment that can be expected to result in death or that has lasted or can last for at least 12 continuous months." See 42 U.S.C. § 1382c(a)(3)(A). Accordingly, episodes of decompensation which happened prior to an onset date are of less relevance.